

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable H. L. Washburn
County Auditor
Harris County
Houston, Texas

Dear Sir:

Opinion No. 0-5360
Re: Does the Harris County
Navigation District have
authority to adopt the
regulations in question
pertaining to compensation
for employees for damages
resulting from personal
injuries or death? And
related questions.

Your letter of May 25, 1943, requesting the opinion of this department on the questions stated therein reads in part as follows:

"I recently submitted to you a request for an opinion bearing upon several phases of the authority of the Commissioners of the Harris County Navigation District, the full name of which is 'Harris County--Houston Ship Channel and Navigation District'.

"I have had recently submitted to me a copy of 'recommendation of special committee, Harris County--Houston Ship Channel Navigation District' in which is set up a complete system of compensation for employees for damages resulting from personal injuries or death. A copy of the 'recommendation' is attached for your examination.

"I understand that the commissioners propose to adopt the 'regulations' detailed in the 'recommendation' substantially as they are now set forth therein. Assuming that the Commissioners will undertake to adopt these 'regulations' without any

substantial change, as seems probable, several
serious questions as to their authority to do so
occurred to me, and I desire your opinion there-
on.

"On December 9, 1941, your department ren-
dered opinion No. O-4140 to me at my request, and
that opinion covers certain phases of the same
matter. In connection with that opinion, I res-
pectfully direct your attention to the paragraph
numbered '8' on page four of the attached 'recom-
mendations'. I assume that your previous opinion
will control as to such paragraph 8.

"In connection with the proposed adoption of
these regulations, I respectfully request your
opinion upon the following questions:

"(1) Does the Navigation District have author-
ity to adopt such regulations?

"(2) If the Navigation District has author-
ity to adopt such regulations, or similar regula-
tions, may it make such regulations binding upon
its employees by simply adopting a resolution ap-
proving the regulations and declaring them to be in
force?

"(3) Does the Navigation District have the
power to make individual contracts with employees
containing substantially the stipulations which are
set forth in these regulations?

"(4) It seems to me that the adoption of reg-
ulations such as are set forth in the enclosed
'recommendation' is the exercise of a purely leg-
islative power, which has not been delegated to the
Board of Commissioners of the Navigation District.
Does the Board have any legislative powers?

"It appears to me that an attempt upon the
part of the Board of Commissioners to create an ob-
ligation to be paid out of the funds of future years,
whether the attempt be made by regulation, or by

individual contract with each employee, is a nullity, for the simple reason that the Navigation District has no authority under the statutes creating it to incur any obligation which would constitute a 'debt'. So far as the Commissioners may attempt to create such an obligation by the adoption of an order or resolution, I think they are clearly without such authority, for the very simple reason that the Legislature has not given them any such power, either expressly or by implication.

' So far as they may attempt to create such an obligation in the form of a contract, it seems to me that they would fall squarely within the opinion of the Supreme Court in the recent case of T. N. & N. O. Railroad Company vs. Galveston County, 169 S. W. 2nd 713. In that case, Galveston County undertook to make an agreement indemnifying the Railroad Company against damages in future years. The Court held that the County was without power to make such an agreement, saying in part:

"'Public policy demands that definite limitations be placed on the power of the several political subdivisions of our government to spend public money. As to counties, the limitation is to pay cash, that is, to pay out of current revenues or from funds within the immediate control of the county. Debt, with a provision at the time it is incurred to pay interest and at least two percent of the principal each year, is the only alternative. If this provision is not made, the "debt" is a nullity. This is the requirement of Art. XI, Sec. 7, Supra. Its language is unequivocal. It voices the public policy demand so clearly that no arm or agency of government should attempt to deny it.'

"The Court in the opinion from which the above quotation is taken based its conclusion upon the express terms of the constitutional provision referred to, but, as we understand the authorities previously submitted in connection with the request for the opinion above mentioned, the Navigation District authority is even more restricted than that of the County. I think it is clear that the Navigation District has no authority to create an obligation which would constitute a 'debt' payable out

of the revenues of future years without complying with the formal statutory requirements for the is- suance of bonds, and then only to the extent that it is expressly authorized to issue such obliga- tions. It appears to be clear to me that the Board of Commissioners cannot, either by regulation or by contract, create an obligation with its em- ployees to pay at an indefinite time in the future: (a) Compensation for time lost by reason of in- juries sustained by the employee in the course of the employment; (b) Medical aid, hospitalization and drugs, without limitation as to amount; or, (c) Death benefits to a stipulated class of bene- ficiaries.

"It seems clear to me that the Navigation District has no implied authority to make agree- ments which amount to insurance contracts with its employees, regardless of the form of such contract.

"I recognize the fact that the Navigation Dis- trict might probably enter into contracts with old line insurance companies for policies of insurance issued in favor of the employees of the Navigation District. Southern Casualty Company vs. Morgan (Com. App.) 12 S. W. 2d 200, affirming, 299 S. W. 76, rehearing denied (Com. App.) 16 S. W. 2d 533; Maryland Casualty Company vs. Rutherford (CCA Tex) 36 Fed. 2d 226. I think, however, that such a con- tract would necessarily be limited to the current year, at least insofar as the payment of the premium is concerned. In other words, the Navigation Dis- trict would be without authority to bind itself absolutely to pay the premiums on such policies in future years, since it is without authority to create a 'debt'. So far as such premiums on such policies would be payable out of current funds, doubtless they would have authority to contract for such policies.

"The Navigation District is not subject to the Workman's Compensation Act. City of Tyler vs. Texas Employers Assn. (Com. App.) 288 S. W. 409, rehear- ing denied 294 S. W. 195; Georgia Casualty Company vs. Lackey (Civ. App.) 294 S. W. 276; opinions of Attorney General, 1912-1914 page 437; Lewis vs. In- dependent School District of City of Austin (Sup. Ct)

161 S. W. 2d 450. The last cited case holds that a statute which provided that any public corporation in this state might make application and enter into agreements for and hold policies in mutual insurance companies was unconstitutional and void.

"In this connection, I also note that a constitutional amendment was adopted November 3, 1936, (Art. III, Sec. 59) by which the Legislature was given power to pass 'such laws as may be necessary to provide for Workman's Compensation Insurance for certain State employees as in its judgment is necessary or required; and to provide for the payment of all costs, charges, and premiums on such policies of insurance; providing the State shall never be required to purchase insurance for any employee.'

"The plan here proposed is distinctly different from the pension plan created by Arts. 6229 to 6243 for incorporated cities having a population of over ten thousand. What the statute appears to contemplate, in creating the pension fund, is a limitation of liability to the specific fund. Byrd vs. City of Dallas, et al., 6 S. W. 2d 738; City of Dallas, et al. vs. Trammell, 101 S. W. 2d 1009.

"In connection with the request for an opinion herein made, I respectfully refer to your opinion No. O-4140, and the opinions of Mr. Ernest A. Knipp attached to my request for opinion dated May ____, 1943, relating to authority of the Navigation District to contract generally and authorities therein cited, in addition to those above mentioned.

". . . ."

The Harris County--Houston Ship Channel and Navigation District was established by virtue of Section 52, Article III of the State Constitution and Chapter 8, Title 128, Vernon's Annotated Civil Statutes.

The said Navigation District is a political subdivision of the State, exercising a part of the sovereign powers of the State and is not simply a public or quasi public corporation like a common carrier or canal and dock corporation.

Sustaining this proposition we cite the case of Durkhart v. Brazos River Harbor Navigation District, 42 S. W. (2d) 96. Also the case of Carpenter v. Arryo-Colorado Navigation District, of Cameron and Wilson Counties, 111 S. W. (2d) 822 and cases and authorities mentioned in these cases. Generally speaking, Navigation Districts are essentially political subdivisions of the State. They are governmental agencies, bodies politic and corporate with the powers to exercise the rights, privileges and powers conferred upon them by law. They are generally treated as municipal corporations in the sense that they are confined to definite geographical areas, and have no governmental powers outside of them and subject to the same rules as applied in arriving at the powers of counties and cities. Article XVI, Section 59 of the Constitution; Trimmier v. Carlton, 296 S. W. 1070; Farrless v. Cameron County Water Improvement District, 25 S. W. (2d) 651; Bexar County v. Medina-Atascosa County Water Improvement District v. State, 21 S. W. (2d) 747.

In the case of Tri-City Fresh Water Supply District No. 2 of Harris County v. Mann, 142 S. W. (2d) 954, it was said:

"It is a general rule of judicial construction that even a normal municipal corporation has only such implied powers as are reasonably necessary to make effective the powers expressly granted. That is to say, such as are indispensable to the declared objects of the corporation and the accomplishment of the purposes of its creation. Powers which are not expressed and which are merely convenient or useful may not be included and cannot be maintained. Furthermore, where powers are granted to a municipality by specific provision, such powers are not enlarged by general language found elsewhere in the Act. . . ."

In discussing this subject, it was said in the case of Foster vs. City of Waco, 225 S. W. 1104, that "any fair, reasonable, substantial doubt concerning the exercise of power is resolved by the courts against a corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is an organic act. Neither the corporation nor its officers can do any act, or make any

contract, or incur any liability, not authorized thereby, or
by some legislative act applicable thereto. All acts beyond
the scope of the powers granted are void. . . ."

There are several sections of the State Constitu-
tion which evidence a desire and intention to give every pos-
sible safeguard to the expenditure of public funds and to
compel their application to be properly expended for the pur-
poses authorized by law. (Article III, Sections 44, 49, 51,
52 and 53. Also see the provisions of Article I, Section 3,
Section 16; and Article XVI, Section 6, of the Constitution.)

As heretofore stated, the said Navigation District
is a political subdivision of the State and certainly its
funds are public funds. Therefore the several provisions of
the State Constitution limiting the use of public funds by
its political subdivisions do, in our opinion, apply to the
Harris County Navigation District.

Generally speaking Chapter 8, Title 128, Vernon's
Annotated Civil Statutes, expressly sets forth certain rights,
powers and privileges of Navigation Districts. Such Dis-
tricts may contract, sue and be sued, construct its own facil-
ities, issue and sell bonds, levy taxes, employ engineers
and attorneys and other employees as may be necessary for the
construction, maintenance and operation, and development of
the Navigation Districts, its business facilities, prescribe
their duties and fix their compensation, etc. However, there
is no specific provision of the statute which authorizes a
Navigation District to adopt the regulations under considera-
tion. The regulations under consideration are very similar to
the Workmen's Compensation Act. The purpose of these regula-
tions is to fix the terms, conditions, and limitations under
which the Navigation District will pay compensation to its em-
ployees in those cases where injuries are sustained in the
course of employment have resulted in disability or death. Said
regulations set forth the rules which are to be followed in de-
termining the rights, liabilities, duties and obligations of
the Navigation District to its employees for damages which
result from personal injuries or death of employees. The
compensations provided by said regulations are to be consider-
ed as salary to the employee. Considering the regulations as
a whole it is immaterial whether such compensation is consider-
ed as salary or otherwise. Said regulations are nothing more
or less than an attempt by the district to provide workmen's
compensation for its employees. The said regulations cover
and constitute an agreement between the Navigation District

and its employees for compensation in lieu of damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained. It is our opinion that the Navigation District has no expressed or implied authority to make agreements which amounts to insurance contracts with its employees, regardless of the form of such contract or regulations. There are no statutes empowering such Navigation Districts to enter into an agreement or adopt regulations such as are under consideration. Therefore, your first question is answered in the negative.

As we have answered your first question in the negative, it becomes unnecessary to discuss the other questions presented in your inquiry.

Our Opinion No. 0-4140 is applicable and will control as to paragraph 8 of the said regulations which provides for medical aid, hospitalization and drugs furnished employees of the Navigation District which are sustainable as a part of their earned compensation where the Board has made general provisions therefor. In other words, the Navigation District has authority to agree, as part of the agreed compensation to be paid employees, to furnish stipulated services for hospitalization, drugs and medical attention. However, as stated in said Opinion No. 0-4140 these cannot be unlimited in amount or kind, and must, therefore, be for some reasonable fixed maximum amount.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

AW:db

APPROVED JUN 12, 1945

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN